Okay, so this is Judge Easterbrook, in case you don't recognize him, who's replacing Judge Bower in our last case here, which is Squires-Cannon v. Forest Preserve District. Mr. Slobig? Thank you, Your Honor. Good morning, and may it please the Court, I'm Robert J. Slobig. I represent the plaintiff appellant, Meryl Squires-Cannon. The judgment of dismissal should be reversed because the District Court did not follow Rule 12b-6. All the issues arise on the pleadings, and all boil down to this. The District Court made a fact-finding, which contradicted the allegations of the complaint, that there was probable cause for this arrest. All the issues turn on this error. In the context of a Rule 12b-6 motion, a District Court should not entertain an argument that the moving defendant has some great piece of evidence. Counsel, why is this case in federal court? I ask this because this doesn't seem to be a dispute about the meaning of the Fourth Amendment. It seems to be a dispute about the meaning of two orders issued by a state court. And that sounds like a dispute about state law, and there doesn't seem to be diversity of citizenship. Why shouldn't this be in state court? The case arises and is in federal court with jurisdiction because of the violation of federally protected constitutional rights. Maybe I'm not being clear. There isn't any federal right to have state court orders carried out correctly. In fact, the Supreme Court has held that in exactly those terms. But that seems to be the right you're asserting. The party's main source of disagreement seems to be, what do these state court orders mean? The disagreement over what these court orders mean entered in the foreclosure case is real, but it is not the crux of the case. The crux of the case is that this woman was arrested and detained and prosecuted without probable cause. Exactly, and the defendants say that the orders authorize that, and you say that they don't. If the orders authorize that, then there's no problem. If the orders don't authorize that, then there's a problem. So we come down to a dispute about what the orders authorize. And having that dispute decided by a district court in the context of a motion under Rule 12b-6 is just procedurally wrong. It's that the court should not have done that. The complaint clearly states a cause of action under Section 1983. The constitutional issue and the statutory basis for being here are clear. But the defendants should not have violated basic rules of procedure by trying to put one by the district court under a Rule 12b motion that the issue of probable cause was to be decided in their favor as a matter of law on the complaint. Because probable cause for an arrest is a factual question. Sometimes. Counsel, given the plaintiff's own affidavit and the email from August 12th, was it 2014? What is the good faith basis for claiming she had permission to enter the property on August 13th? It's alleged in the complaint in paragraphs 15 through 19 that she had been there on a daily basis, morning and evening, taking care of the horses, that her employer, a limited liability company with an active lease on the property, had rights to be there and sent her there, and that there was no order saying that she had no right to be there. It was really wrong with the way the district court- I'm concerned that if we decide this was aggressive use of 12b-6, that we'd be sending you back to a Rule 11 motion given that email and the plaintiff's admission that she received that notice. Even if she's got an argument about whether she has a right to enter that property, she's being told by the owner, stay out. Right? There's not a right of self-help. There is no right of self-help. So what would be the point of a remand? The point of a remand would be to have the case decided by a fact finder, as it should be, because the- Given undisputed evidence, is there a dispute about whether she got notice to stay out and disobeyed that instruction? I don't think the record in this case appropriately- There's notice- I will candidly say to you, yes, there is going to be evidence that she received notice that the person entitled to the property at the time- that order has since been reversed, by the way- but that the Forest Preserve, who had titled the property at the time, didn't want her on the property. I'll candidly say- She got that notice. That's what we expect the evidence to show. That's not- The plaintiff said that in an affidavit in a state court case, correct? That's correct. And is it improper to take judicial notice of that? In the context of a motion under Rule 12b-6, we've made the point that- as conclusively contradicting the facts that are alleged in the complaint in the context of this motion under Rule 12b-6. That affidavit is something that ought to come up perhaps on summary judgment or perhaps at trial. But it is factual- Or a Rule 11 motion. I don't think so, Your Honor. I don't think so. If you were a tenant who had a lease on an apartment in a building, and your rent was paid and your lease was in effect, and your landlord one day said, I don't like your looks anymore, I don't want you here, that doesn't mean you don't have a right to be there. You have a right to be there. What was her right to be on the Forest Preserve, in the Forest Preserve? I think it's questionable about whether it was a Forest Preserve. What do you mean it's questionable whether it was a Forest Preserve? What might it have been? It was real estate, the title of which had been transferred to the Forest Preserve District. Right, so it's owned by the Forest Preserve. Owned by Forest Preserve, pursuant to a judgment order which has since been reversed. And she had been there every day, before and after judgment, caring for horses, boarded and bred on the property. And she was there in the... So the Forest Preserve acquires this property, and with it acquires a bunch of horses, right? I don't believe the Forest Preserve acquired the horses, and I don't think anyone can see that either. What do the horses do in there? Are they trespassers? No, the horses are not trespassers either. The horses are there being bred and cared for by Royalty Farms, LLC. So the Forest Preserve is allowing horses to wander around its property, but those horses are taken care of by some other entity, not by the Forest Preserve. So horses are taken care of by Royalty Farms, LLC. Who owns Royalty Farms? It's a limited liability company. I think my client owns a part interest in it, and other individuals own other interests in it. That also is not on the record. But the fact that Royalty Farms had a lease on this farm, in place when the Forest Preserve got its foreclosure judgment, is a symptom of... Well, does she work for Royalty Farms? She does, and that is in the record. So is the notion that it was her job to take care of these horses for Royalty Farms, which the Forest Preserve allows to raise horses there? The Forest Preserve will tell you that they don't allow it, but the problem is the Forest Preserve used this exotic and unusual means of acquiring this land. Instead of condemnation, they bought a note and mortgage and took over a foreclosure case that was in progress. They became a plaintiff in an Illinois mortgage foreclosure case, and they neglected to name, as a party defendant, a lessee with rights in the property. So they did not get a judgment against the lessee, that lessee's rights to the property continue in survival judgment. Is that Royalty Farms? That's Royalty Farms. And what the complaint does show is that my client demonstrated the existence of the lease to the arresting officer on the property on the morning of the arrest. So what's the officer supposed to do? Adjudicate that? No, no. He's supposed to say, your idea that you should leave the property now and have this decided by a judge is a good one. Go and get this decided by a judge. He's not supposed to handcuff her. Did she go? Lock her up. He wouldn't let her. He handcuffed her and threw her in a car. And the point I want to make here is that the defense motions and the district court's acceptance of their arguments all ride on this false notion that the circuit court orders authorized this arrest. And that's just not so. Then what authorizes the arrest? The circuit court's orders in the foreclosure case. The two orders that were entered in the state court. And you can tell it's not so either from reading the orders or from knowing that Illinois law does not allow what these defendants claim about the orders. The force preserves brief in this court argues that the officers were duty bound to enforce those orders by making this arrest. Well, that's contrary to law, and it's contrary to the text of the orders. Under the law, they had neither the duty nor the discretion to do anything about enforcing those orders because the orders explicitly say go to the sheriff if these orders need to be enforced. And the text of the order, in addition to saying if possession is withheld, says that the sheriff shall do what's necessary to enforce the orders. It doesn't say force preserve district to go exercise self-help, send your own armed guards out there to do what you want on this land. That's contrary to Illinois law. Does the force preserve, do they have law enforcement officers? Oh, my gosh, yes. Do they have arrest powers? They have vehicles. They have arms. The force preserve district police. Do they have arrest powers? They sure exercise them in this case. Whether those powers are lawful or not remains to be achieved. Is there any issue about that? I don't know, Your Honor, frankly. Well, but this is federal property, isn't it? Oh, no, Your Honor. This is a state forest preserve? This is a Cook County forest preserve district property. Okay. The text of the order says that if possession is withheld, then the sheriff shall enforce the orders, not the force preserve district. And what we have here is a lone woman, a grandmother, walks into 400 acres and feeds a horse, and they're saying that's possession of the property is withheld? And that question is serious in this context because possession of land is itself a fact question. So we have a grievous misreading of the orders here by the district court. First of all, the judgment order that said the sheriff can enforce this order didn't need to be enforced at all because possession of this land was not withheld. Nobody was withholding possession of the farm from the forest preserve district. Secondly, the circuit court judge in Cook County who entered the order specifically and explicitly contemplated that any enforcement necessary of his order would be carried out by the sheriff, not by the forest preserve district resorting to prohibited self-help. And then we have this longstanding body of case law in Illinois that says it's both statutory and case law that prohibits a party in the place of the forest preserve district from enforcing its own rights in the land through self-help. There's a reason for putting that responsibility on the sheriff. It's because the governing law arises out of a former era when at common law people resolve disputes over the possession of land with violence. So having been acquitted, is she still able to go on the land and feed the horses, whatever she does? Yes, Your Honor. And that lease is still in place and the foreclosure judgment has been reversed. So the case is remanded to the circuit court of Cook County where more remains to be litigated. Is it really, what, litigated? What remains to be litigated? What remains to be litigated is whether the forest preserve district has a right to this property at all. Right now it's a foreclosure plaintiff with an unproven case. Well, she doesn't care about that, does she? She cares about being able to feed the horses, right? That's correct. And that she's allowed to do, right? I think the forest preserve will give you a bad time about that. I think they will say she's not allowed. But she won her case. Why isn't that enough to establish her right? That's something we wish we knew, but everything in this case has been ruthlessly and vigorously contested by the forest preserve district, starting out with the exotic and unusual way they went about trying to get the land in the first place, which now isn't working out too terribly well for them. But even while they had title to the land momentarily, they did not have a right to enforce their claim on that land through force of arms and self-help. They took into their own hands, hands licensed to bear firearms, a legal dispute that should have been, to your point, Your Honor, determined by the circuit court of Cook County. I see I'm getting close to my time for rebuttal, so I'll sit and see what needs to be said. Thank you, Your Honor. Okay. Thank you, Mr. Slavik. Mr. Feeney. May it please the court. My name is Dan Feeney. I represent the law firm defendants in this case, Holland and Knight and Christopher Carmichael. I need to notify your honors, there's been a slight error. These are the police officers? I represent Holland and Knight and Christopher Carmichael, who is a private attorney. Pardon? Holland and Knight and Christopher Carmichael, the private attorneys who represented the Forest Preserve District. I do need to notify the panel there's been a slight change in the presentation of the defendant appellee's case. Due to a last-minute medical emergency, Mr. Patterson is not able to argue the matter for the government defendants. His colleague, Jamin Avery, will be doing that, and we are going to slightly reallocate our time so that my slot will be 10 minutes and Mr. Avery will present for five minutes.  He's an officer, isn't he, or not? Mr. White is the general counsel of the Forest Preserve District. But Dwyer, is he the... There are officers who are defendants, Your Honor. So there are officers who are defendants. I'm sorry, I don't represent them. Mr. Avery represents those defendants. So what's all this about? I don't understand. Royalty Farms, it still has some rights in this land, doesn't it? Well, the way it played out, at the time of the arrest, which is what matters, at that point the plaintiffs had no rights in the farm and the orders of the foreclosure proceeding did not reserve any rights for Royalty Farms, and they were not operating with the permission of the Forest Preserve District on the date of the arrest. If you want to know what has happened since, there was a reversal of the foreclosure judgment based on a finding that it was improper to dismiss on the pleading certain affirmative defenses. So is Royalty Farms back in business in the Forest Preserve? No, and it is very convoluted, but Royalty Farms, the lease, the purported lease on which the plaintiffs were basing Royalty Farms' rights has been terminated. There is a separate piece of litigation in municipal court that has concluded that that lease no longer gives them possession rights. Royalty Farms is gone. So what about the horses? Are the horses still there? My understanding is today the horse herd got down to about four in number. But then after the reversal by the appellate court, the plaintiffs have brought new horses to the farm without the permission of the Forest Preserve District. So I think there are seven horses on the farm now. The problem, this is not a standard eviction. You caught a farm? Well, it's the 400 acres, and within those 400 acres there are some stables and some paddocks. And that, in those stables and paddocks... And who manages the stables and so on? The Forest Preserve District controls all of the property, including the stables. They feed the horses? I don't know what the status is today, Your Honor. At the point in 2014, when this arrest occurred, there was an order entered approving the foreclosure sale in May. There were 30 days given before the eviction terms were to be in effect. There was a phase where certain... There were hired hands. There were individuals who, on a daily basis, cared for the horses there. They were allowed to still care for those horses with the understanding they were going to be removing them, that the owners of the horses would find a new place for these horses to reside. So this is a litigation over seven horses? Well, this is a litigation over whether there was probable cause existed to arrest Ms. Squires Cannon. That's what this particular lawsuit is about. The entire case is a long, drawn-out fight over whether the Cannons, who defaulted on their mortgage in 2008 and haven't paid taxes or their mortgage since then, are able to somehow cling to some possessory rights in this property. And through litigation, through the fact that the first bank went under, the mortgage process took much longer than normal. Through the fact that the sheriff of Cook County is not terribly well-equipped to evict livestock, it has made it that much more difficult. If this were just equipment, it would be much easier. This is a ridiculous subject for litigation. You won't find disagreement from me on that point, Your Honor. The point that's immediately before this court... Can't they sit down and settle this? I mean, it is so trivial, right? You have the stables are becoming irrelevant. You only have seven horses. So what was this a fight over? Your Honor, there was an attempt by the very talented mediation office of this court to try to resolve this, and it was not successful. That's all I can report on that front. Okay. So another mischaracterization. I guess to answer a question Judge Hamilton raised, the Forest Preserve District officers do have law enforcement authority under state statute. They were fully authorized to arrest trespassers on Forest Preserve District property. We are not... I want to... But why did they arrest her? I mean, why didn't they just... Why didn't they just tell her to leave? Why do you arrest people for something like this? She's not harming anybody by feeding the horses. Well, Your Honor, there had been a long, drawn-out dispute, as Mr Slobig correctly stated. There had been agreements for the plaintiffs to remove their horses from this parcel so the Forest Preserve District could possess it fully and without the interference of the continued, I believe it was described as a busy equine-breeding farm that was being operated by the plaintiffs, despite the fact that these orders had dispossessed them and directed them to vacate the property. Why she was arrested? Because there was not a good-faith belief that if asked to leave and if she left today, that she wouldn't come back tomorrow. There was, as Judge Hamilton pointed out... What harm was she doing by coming back? Well, as long as she was able to continue coming to the property and taking care of these horses, she had no incentive to find a new home for those horses. And those horses, as we see today, are still on the land because it's very difficult for the Forest Preserve District to forcibly remove them without the cooperation of the plaintiffs. And the Forest Preserve wanted them off? Why? Because the Forest Preserve wants to turn this property into Forest Preserve land, open to the public. And they can't do that when there are privately owned horses that aren't safe for people to hike through their paddocks. Not safe? Well, I don't think I would... No. Well... You think the horse is going to attack people wandering around? There is a record of that happening in general with horses. But I think from liability purposes, I don't think the Forest Preserve District would allow public guests to the Forest Preserve District land to interact with these privately owned horses. Whether it was safe or not, it wasn't feasible for... And it wasn't proper for Ms. Cannon and her husband to continue to operate their horse breeding farm on what was then land titled to the Forest Preserve District. Well, were they making money? I mean, were they selling these horses or just doing it for love? It's unclear whether they even owned all the horses, whether they were obtaining boarding fees. It's unclear to me, Your Honor. I don't know whether this was a money-making operation or this was just a hobby. I'm not certain. Has an ownership of the horses been a subject of some of the broader litigation? It has been discussed and addressed in litigation because at different times it's been represented to the court that the horses didn't belong to the Cannons, therefore they couldn't remove it, it belonged to a third party. I think later, when the Cannons revealed this theory that Royalty Farms was the LLC, that Ms. Cannon is the manager of, she controls this LLC, that maybe that's the third party they were referring to. But there hasn't, to my knowledge, in the many different lawsuits that have been filed and litigated, I don't believe the ownership of the horses has been a contested matter. The Forest Preserve District certainly doesn't assert any ownership. Can the public go into the Forest Preserve and walk around and so on? As I said, portions of the land now, my understanding, are open. There are trails. It's 400 acres. So there's portions that are open trails, the public can go there. The part of the Forest Preserve that is the stables and the paddocks that house privately owned horses, that is not open to the public and that was not open to the public. And that's where the seven horses live? That's where, currently. There were more horses on the day of her arrest, but yes. Okay. And maybe looping back to the question, why did they arrest her? As Judge Hamilton pointed out, there was a specific notice given to Ms. Squires Cannon the day before her arrest, which she has conceded in an affidavit that she filed in the state court, that she had noticed that they were prohibiting her from the property and moreover that they would treat her as a trespasser if she came. I think that ends the probable cause discussion. If they had just told her, you'll have to leave or we'll arrest you, wouldn't that have done the trick? I don't know whether it would have done the trick, but I think it was within the officer's discretion to decide whether to proceed with the arrest or whether to escort her to the property line. She had, the question is, did they have probable cause to believe she had been engaged in trespass and she was on the Forest Preserve District property without authorization and with knowledge that she wasn't. Police do not arrest people every time there's some kind of infraction, right? She's not dealing with a dangerous person. You tell her, you have to get off here, you have to get out, I know you love the horses, but you have to leave. You're not permitted here and if you persist, we'll have to arrest you. But do you think you give the person a chance to leave voluntarily? Your Honor, I don't disagree that that was one of the reasonable options the officers could have taken, but that doesn't mean that what they did do was without probable cause. She was guilty of trespass. There was enough facts known to them for reasonable people to conclude that she was guilty of trespass. I'd also like to touch on there is the absolute litigation privilege that applies specifically to the outside lawyers who represented the Forest Preserve District. All that they are alleged to have done in this case is to have advised their litigation client that it was proper and that they were allowed to arrest Ms. Swires Cannon for trespass. That is clearly covered by the absolute litigation privilege. It's a statement made in connection with pending litigation and it is in furtherance of the representation. For that reason alone, the claims against the law from defendants fail. There is also a count to conspiracy. The intercorporate conspiracy doctrine precludes that in this case because the Forest Preserve District employees can't conspire with one another and when they seek advice from their outside litigators, that's not the subject of conspiracy either because the lawyer is acting as an agent of the entity. Okay. Thank you very much. Thank you, Mr. Slogan. Mr. Feeney. May it please the court. Good afternoon. My name is Jamin Avery. I'm an assistant state's attorney. As Mr. Feeney related, the attorney from our office that was going to argue the case fell ill last evening. I represent the Forest Preserve District, Dennis White, its lawyer, Patrick Dwyer, Eric Hildebrand, and Officer Cooper, all three of the Forest Preserve officers that were involved in this matter. Your Honors, the court did properly, the district court did properly, consider the state court orders and there's ample Seventh Circuit jurisprudence that we've cited. So plaintiffs are just wrong that the district court erred by considering those orders. In addition, the plaintiffs also are incorrect that the court should not have considered the affidavit and also the email that prompted the affidavit that Ms. Squires Cannon filed in the state court. However, her withdrawal of contention before the district court, which is docket 78, I believe, establishes that she did have notice. In other words, she withdrew the argument that she didn't have notice. That was on the motion to reconsider, wasn't it? That is correct. And again, as counsel for the private attorneys pointed out, there is probable cause here and I will not repeat any arguments on that account. But in addition to, or if this court finds probable cause did not exist, all four of the individual defendants are entitled to qualified immunity. The three officers are entitled to quasi-judicial immunity and the doctrine of intercorporate conspiracy, which counsel also alluded to, precludes liability in count two against all of my clients. That is the district, its lawyer, and the three officers. Now one of the questions that was raised by the court, I believe at least two of those before me, was what would happen or why wasn't the plaintiff allowed to leave? Why did the officer arrest her? But here's the conundrum that faces and faced and probably still to this day faces the district. And that is if the plaintiff's theory of the case is correct, that only the sheriff can evict and the police officers are liable if they arrest and the Forest Preserve District cannot resort to self-help and if she just left, she could come back every day. Now the allegations in the complaint literally say that she was there on a number of occasions for at least 60 days or maybe 90 days after the order was entered. As the record reflects, that was only enforceable after 30 days. But let me give you a hypothetical. Let's say a residential property was foreclosed and the foreclosed party, the former owner, really had a nice landscaping and a nice garden and she came there every day to water and tend the garden. By plaintiff's contention, the sheriff couldn't evict her. She wasn't in possession. The local police can't evict her. They don't have the authority to evict. They can't arrest her by virtue of this lawsuit. They're claiming that they would be liable if they arrested her and the property owner at the time could not resort to self-help, meaning they have to go through all sorts of machinations, if you will, to accommodate and effectuate her not coming on the property and bothering the possessory interest of the new owner. But what was she doing on the property that was hurting anyone? Well, as counsel for the private parties alluded to or stated outright, frankly, her being there and those horses being there, which it's hard to separate the two, but the horses were not specifically ordered by the state court not to be there, as the plaintiff was. So her being there and the horses being there all interfered with the possession of the district wanting to use all 400 acres for its public purpose, as stated in the statute. Well, what use would they have for it that her presence would interfere with it? Her presence continued the existence of the horses on the property in contravention to the district's possessory interests set forth in those court orders. So the district wanted to remove the horses? Eventually, yes, but... Well, if they remove the horses, that removes her. Correct. So why didn't they just do that? The problem is that... Do they still have horses there? Yes. Well, I thought they wanted to remove the horses. They do. Neither the Forest Preserve nor the sheriff... I don't understand. They only have seven horses there. They can't remove them? There was an agreement that the plaintiff and her company were going to remove the horses in 2013, which has not occurred. But the sheriff has indicated an unwillingness, probably an inability, to remove the horses in a typical eviction action. It's just not something that they typically do. That's the whole conundrum of this whole lawsuit. How many horses are there in Cook County? In Cook County, I don't know. In this area, there are a lot. This is an equine breeding area, this area of the county. Extremely easy to find a couple of people who will put a halter on the seven horses and lead them out. Really? There is information extraneous to the pleadings. So they have their oats and so forth. They'll very docilely exit. There is information extrinsic to the pleadings in this case. On that point, if the court would like me to address that briefly. Horses apparently are not so docile without having their masters, their owners, people that they're familiar with, which was part of what counsel was alluding to with regard to the safety aspect. Members of the general public coming around the horses could spook them and there's all sorts of trouble there. Like I said, that's extrinsic to these pleadings, but I'm one of the attorneys in one of the ancillary cases, or was. So that's why I can answer that question. That's true, but there are of course many people who are horse people, horse experts, love horses. And if you want to get seven horses removed from one place to another, it's not going to be that difficult to find the people who will do that. There are people transporting horses all around the country, right? Correct. I don't know it's quite as easy as that, Your Honor, but I don't know enough about it to say yes or no to that. But again, the point of the matter before this court is that probable cause existed by virtue of the orders that the officers and the attorney under applicable case law are entitled to qualified immunity. I see, though, why they didn't just tell her to leave, say you've got to get out of here, you're not entitled to be here, you must leave, and if you don't, we're going to arrest you. I don't understand arresting before you give a person a chance to leave. Well, they did tell her to leave as Judge Hamilton in his question to the plaintiffs by virtue of the email to Ms. Cannon's attorney and also her affidavit in the foreclosure case. She had noticed that she was not to go there on August 13. There's a big difference where the police accost a person and say you're not allowed to be here, now you have to leave, and if you don't leave, we'll arrest you. That's an order she would have obeyed. It's not clear from the record before this court that that is correct, but I can't say to that. Well, if she didn't obey it, then they can carry her off, but I don't know why they didn't give her a chance to leave voluntarily. There is no evidence in the record to support either conclusion, so I am choosing not to answer it with information that's not before this court. We know that the warning was not sufficient the night before. I'm sorry? We know that the warning the night before was not sufficient. It appears. And I see my time has expired. We believe that the district court's findings were correct on all counts, and that is as to the existence of probable cause, that the qualified immunity applies to the four officials of the Forest Preserve District, that qualified immunity applies to the officers, and also that none of the district's employees can conspire with themselves under Illinois law applicable to this court. Thank you very much. Okay. Thank you. Thank you, Your Honor. The colloquy here this afternoon has shown that there are a lot of contested issues of fact that the record doesn't completely treat. That is the main reason why this case should not have been dismissed on Rule 12b-6. One thing that is absolutely clear from the record, contrary to what Mr. Avery just told you, is that an opportunity to leave instead of being arrested that morning would have been exactly what Merrill Squires Cannon would have done. In fact, the complaint specifically alleges that she asked to be allowed to leave so that she could have a court determine her right to be there. So why wasn't the warning the night before enough? Because she was on that property frequently with the concurrence of the Forest Preserve District personnel there as the representative of the tenant that had lease rights in the property. She was there out of her love for the horses to continue caring for them. Then she should have stayed if she'd been given a warning the next morning, right? If she had a legal right to be there? Well, I don't understand the argument. I don't understand your argument, counsel, that you've got to, counsel, I don't understand your argument that there's a legal difference between a face-to-face demand that she leave and a warning that she stay off. Well, the warning was not enough to bar her from the property because the warnings were based on the circuit court's orders and the circuit court's orders don't bar her from the property. The district court misread the orders as she used the word banning Merrill from the property. The orders don't say that. And she, the district court used the words that her daily entry to the property was in contravention of those orders. The orders don't say that either. Those, those findings ignore the complaints, factual allegations that her employer had lease rights and that she was there pursuant to those rights that the, they ignored the complaints, factual allegations that she confirmed with the forest preserve personnel that she had a right to be there. Mere presence is not the same thing as withholding possession, but they cannot be equated. If, if, if the owner of an ice cream store was evicted and the score store came under new management and then the owner came back in, the former owner to buy an ice cream cone, I, that's not taking possession of the store back. That's, that's being there. It's not even, it's, you know, it's possession, it's presence. It's not criminal trespass. And, and my point again is that these factual issues should not have been determined on motion. I, I see I've used my time. I thank you, your honor. Okay. Well, I'm going to take under advisement and the court.